440 So.2d 129 (1983)
STATE of Louisiana
v.
Ramus J. BENOIT, Jr.
No. 82-KA-1114.
Supreme Court of Louisiana.
October 17, 1983.
Rehearing Denied November 18, 1983.
*130 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Dist. Atty., Larry Regan, Asst. Dist. Atty., for plaintiff-appellee.
D. Michael Mooney, Lake Charles, C. Thomas Tolbert, Sulphur, for defendant-appellant.
DIXON, Chief Justice.
Defendant Ramus J. Benoit, Jr. was convicted of first degree murder and sentenced to life imprisonment. Defendant has appealed, arguing four of eight assignments of error.
In the early morning hours of October 8, 1981 defendant, his younger brother Larry Benoit, and Vaughn Howard called for a taxi. They instructed the driver to take them to a remote area outside Lake Charles where the driver was shot and robbed. The body was left at the side of the road and the three abandoned the taxi about three *131 miles away near defendant's aunt's house. The guns and some bloodstained clothing were hidden in a culvert pipe. The three then went to the aunt's house where they washed their clothing and slept.
That afternoon the defendant, Larry and Vaughn were questioned by the police and gave statements implicating themselves in the killing. Defendant's statement indicated the purpose for calling a taxi was to rob the driver, since they believed taxi drivers always carried money. At trial defendant claimed that story was a fabrication[1] the three had agreed upon; the real purpose was to purchase drugs from a driver that they knew and, when the driver pulled a gun to rob them of their drug money, he was shot in self-defense.

Assignment of Error No. 1
Defendant cites as error the trial judge's denial of the motion to suppress the confession on the basis that the defendant did not intelligently waive his constitutional rights.
Defendant was seventeen years old at the time of the offense. At the hearing on the motion to suppress, defendant's expert witness in psychiatry testified that Benoit had an IQ of 85 to 87 and was operating at the level of an eight to ten year old. She also testified that the defendant told her he had been on drugs for three days prior to the crime, which would reduce his mental abilities even further.
Before the state may introduce a confession into evidence, it must be affirmatively shown that it was freely and voluntarily given. R.S. 15:451. Whether such a showing has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Lindsey, 404 So.2d 466 (La.1981); State v. Williams, 383 So.2d 369 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981); State v. Alexander, 339 So.2d 818 (La.1976). Where the accused is in custody, a prerequisite to admissibility of a confession is the advising of the accused of his constitutional rights and his intelligent waiver of those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court's determination that a statement was free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence. State v. Lindsey, supra; State v. Williams, supra; State v. Trudell, 350 So.2d 658 (La.1977).
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, this court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Lindsey, supra; State v. Anderson, 379 So.2d 735 (La.1980); State v. Collins, 370 So.2d 533 (La.1979); State v. Neal, 321 So.2d 497 (La.1975); State v. Nicholas, 319 So.2d 361 (La.1975); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). The critical factor is whether the defendant was able to understand the rights explained to him and voluntarily gave a statement. State v. Lindsey, supra; State v. Anderson, supra; State v. Trudell, supra.
At the hearing on the motion to suppress and at trial,[2] the state presented evidence concerning the circumstances surrounding the making of defendant's statement. Defendant Ramus Benoit, Larry Benoit and Vaughn Howard were contacted by the police at their residence about 2:30 in the afternoon, and asked where they were the night before and whether they had seen anything. The three answered that they had been home. Since this answer conflicted with information received earlier from *132 the aunt,[3] the three were asked to come to the station for questioning. Defendant's interrogation began around 4:25 p.m., after the police had finished questioning Vaughn Howard. The officers testified the defendant's rights were explained to him with the use of a "rights form" and that defendant responded that he understood his rights as they were being explained. The officers further testified the defendant's physical condition was stable, his speech was coherent, and he did not appear to be intoxicated or on drugs. Defendant refused to answer questions concerning the participation of the others, saying that he would only tell what he had done and that the others should tell of their own participation. Defendant declared he did not want a lawyer present at that time.
Defendant initially gave an oral statement in which he indicated where the guns had been hidden. As it was approaching dark, defendant and the officers went to retrieve the guns, and defendant was brought back to the station. He was informed of his rights a second time, and signed a second waiver. He then gave a written statement to the police.
The evidence indicates the defendant and the others planned the robbery of the cab driver and called the cab company. The driver was directed to a remote area and shot many times. He was then dragged to the roadside ditch. Defendant reloaded his gun and shot the driver again to make sure he didn't live. Twenty-four dollars was taken from the driver. The cab was then driven three miles away and abandoned and the guns and bloodstained clothing were hidden in a culvert pipe. The three then went to the aunt's house where their clothes were washed and they slept. After arriving home, the three slept until the early afternoon when they went to play video games with the money they had taken. According to the defendant, a false account of the shooting was agreed to and given to the police. This record substantiates the trial court's conclusion that all of the circumstances indicate the defendant had sufficient intelligence and awareness to knowingly waive his constitutional rights.
This assignment of error lacks merit.

Assignment of Error No. 2
By this assignment of error, defendant contends the trial court committed reversible error in failing to limit cross-examination by the state of the codefendants called to testify by the defense. Without a ruling from the bench that cross-examination would be limited to the issue of voluntariness, the witnesses (the severed codefendants) refused to answer any questions by invoking their privilege against self incrimination.
Defendant sought to call Larry Benoit and Vaughn Howard to testify concerning the drugs that defendant had taken in the three days prior to the crime, in support of his contention that his already limited mental capacity was further reduced to the point where he could not understand his constitutional rights sufficiently to waive them.
A defendant may testify at a hearing on a motion to suppress without being subject to cross-examination on other matters. C.Cr.P. 703. A witness who is not the accused may, under certain circumstances, take the stand and testify as to some matters and invoke the Fifth Amendment as to others. State v. Bolen, 338 So.2d 97, 99 (La.1976). In State ex rel. Doran v. Doran, 215 La. 151, 39 So.2d 894 (1949), this court adopted the prevailing federal rule that where a witness voluntarily takes the stand for the purpose of testifying as to one issue only, he cannot, under cross-examination, be made to testify against his will concerning matters that are *133 totally unrelated to that issue. At the hearing on defendant's motion to suppress, the sole issue before the court was the voluntariness of defendant's statement; other matters would have been irrelevant. The trial judge erred in ruling that the witness defendant sought to call could be cross-examined on the whole case.
The state contends, however, that any error on the judge's part was harmless, in that the testimony sought from these witnesses would only have been cumulative. Defendant's statement indicated that he had taken two quaaludes prior to calling for a cab, and the psychiatrist testified that she learned from both the defendant and his brother that defendant had taken drugs for several days prior to the night of the crime.
It appears from the trial judge's reasons for denying the motion to suppress that he did not consider the defendant as having proved that he was not functioning at his full 85% intelligence level. The testimony of the psychiatrist indicated that if the defendant had been using drugs he would not be functioning at his highest obtainable level. This was accepted by the trial judge; however, the judge concluded that there was insufficient proof the defendant was under the influence of drugs at the time the statement was given, since the information came from the defendant himself. The testimony of the severed codefendants might have required the trial judge to conclude that the defendant was functioning at less than his 85% level.
Such a conclusion, however, would not have required the trial court to grant the motion to suppress the defendant's confession. Whether intoxication exists and whether it is of a degree sufficient to vitiate the voluntariness of a confession are questions of fact. State v. Narcisse, 426 So. 118, 126 (La.1983). The trial judge had before him the testimony of the officers who interrogated the defendant and all stated that he did not appear intoxicated and appeared to have normal intelligence. The defendant had slept for several hours between the commission of the crime and his confessing his involvement to the police, and it had been at least twelve hours since any drugs were taken. There is sufficient proof that the defendant was able to intelligently waive his constitutional rights.
This assignment lacks merit.

Assignment of Error No. 3
The trial court's denial of the defendant's request for a continuance on the morning of trial is alleged as Assignment of Error No. 3. Defendant contends there was insufficient time to prepare for trial and that important evidence, particularly the autopsy report, was not available prior to the beginning of trial.
C.Cr.P. 712 provides:
"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor."
A denial of a motion for a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Haarala, 398 So.2d 1093 (La. 1981); State v. Johnson, 343 So.2d 155 (La. 1977).
A copy of the autopsy report was made available to the defense counsel during trial shortly after a copy was provided to the state. The report was not introduced into evidence by either side, the state providing the live testimony of the pathologist to show the cause of death from multiple gunshot wounds. The trial judge indicated in his per curiam to this assignment of error that the autopsy report did not provide any facts not already known. The defendant admitted at trial that he shot the victim in self-defense.
Defendant failed to show specific prejudice at trial and has not proved to this court any specific prejudice. The trial judge did not abuse his discretion in denying the motion for a continuance.
This assignment of error lacks merit.

Assignment of Error No. 5
In this assignment of error, the defendant contends the trial court erred in not *134 excusing for cause two prospective jurors. Both indicated during voir dire that the defendant had some obligation or duty to testify on his own behalf in order to "clear himself." However, in response to questions from the trial judge, both indicated that they would apply the law as given by the court.
The trial court is vested with broad discretion in ruling on challenges for cause and such rulings will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Eastin, 419 So.2d 933 (La.1982). We have reviewed the voir dire of these two prospective jurors and find no abuse of discretion on the part of the trial court. Although these prospective jurors came into the court with preconceived ideas and expressed the natural desire to hear the defendant's side of the story, they both understood and accepted their duty as jurors to apply the law as given by the judge to the evidence presented in court.
This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
LEMMON, J., concurs in the result.
NOTES
[1] Defendant testified on direct examination that they figured it would be worse if the police knew drugs were involved than if the police thought it was a robbery.
[2] In determining the correctness of a trial court's ruling on a motion to suppress, we consider the evidence presented both at the hearing on the motion and at trial. State v. Lindsey, 404 So.2d 466, 472 n. 3 (La.1981); State v. Fischer, 380 So.2d 1340, 1342 n. 1 (La.1980).
[3] Defendant's aunt, after dropping the boys off at their home, was approached by sheriff's deputies at a stop sign near the crime scene. She was asked if she had seen or heard anything between midnight and 6:00 o'clock that morning. She responded that she had not, and drove on. She then realized that the boys had been out and might have seen something. After talking to her husband, she called the police and told them that the boys had been in the area at the time and might have some helpful information.