PLOTKIN, Judge.
On January 10, 1987, the defendant, Terry Woods, a/k/a/ Alphonse Desmond, was charged with being a convicted felon in *986 possession of a firearm, a violation of LSA R.S. 14:95.1. On May 6,1987 he was found guilty as charged at a judge trial. He was sentenced to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals that conviction, contending that the State failed to give written notice of its intent to introduce a confession and that the confession was not freely and voluntarily given. We find no error in the trial court’s ruling on the admissibility of the confession. We, therefore, affirm the defendant’s conviction.
FACTS
At approximately 11:00 p.m. on November 21, 1986, police responded to a shooting call in the Magnolia Project. Officer B. Rhodes observed a car leaving the scene. After seeing the officer the car stopped and the officer found a man dying of gunshot wounds. The man was taken to Charity Hospital where he was pronounced dead.
Officers Daniel and Hessler also arrived at the crime scene where an unidentified person approached Officer Hessler and told him that the perpetrator of the shooting was in a building across the street. Officer Hessler proceeded across the street with Officer Daniel following. In a stairwell at 2817 Willow Street, the officers found the defendant, Terry Woods, lying up against the wall. Woods had been shot many times and was bleeding profusely.
Officer Hessler testified that as he approached the building where he found the defendant, he heard moaning from the stairwell. He stated that he told the unknown person in the stairwell to throw down any weapons, to which the person only response was “Help me.” The officer testified that he peeked around the stairs and saw the defendant sitting on the landing with his hand on a silver revolver. After again ordering the defendant to throw down the gun, the gun was tossed down to the landing where Hessler stood.
Officer Hessler related the context of the defendant’s statement which was given after the defendant had been advised of his Miranda rights. He testified that the defendant’s description of what had happened was “real sketchy” as he related that he had been in an argument over drugs that he had found. The defendant told Officer Hessler that he had fired back after his assailants had fired at him.
Officer Daniel testified at trial that he followed his partner into the stairwell and saw Hessler pointing his gun at Woods with a gun lying on the ground next to the defendant. He stated that there were numerous pellets and casings around the area. With his legs disfigured from the knees down as if they were broken, the defendant asked for help as he bled from the legs and the buttocks. Daniel testified that when he and Officer Hessler tried to question the defendant, he was very hysterical and bleeding a great deal.
Officer B. Rhodes testified that he was already at Charity Hospital when the defendant arrived in the emergency unit. Officer Rhodes stated that the defendant told him that in the argument over drugs, he was shot and he shot back. When he was placed under arrest, the defendant repeated that he had been shot first and had fired back only to protect himself. Officer Rhodes revealed that the defendant had told him that the gun that was found in the stairwell was not his. Rather, it belonged to one of the persons who fired at him.
The defendant testified, as he walked across the court in the Magnolia Housing Project, someone called him by his name. He stated that, as he turned around, he was shot four times in the legs and in the buttocks. The defendant contended that, because both his legs were broken, he crawled up the stairwell where he was shot two more times.
The defendant testified that the gun that was found near him was not his gun and that he did not have a gun. He stated that his assailants threw the gun at him after firing the last shot. He denied having stated that, after being fired upon, he had returned fire. The defendant did admit to having been convicted on two counts of armed robbery.
Officer Tidwell testified as a rebuttal witness for the State, after both sides stip *987 ulated that he was an expert in firearms investigation. He stated that he had analyzed two bullet fragments that had been removed from the defendant’s body and compared the fragments to the gun found near the defendant. The officer testified that one fragment did not exhibit sufficient stria for purposes of comparison. When analyzed, the other fragment, a piece of a copper jacket, did not match the gun found near the defendant.

Errors Patent

A review of the record reveals no errors patent.

Notice of intent to introduce a confession

The defendant argues that the State failed to give written notice of its intention to introduce a confession as mandated by La.C.Cr.P. art. 768. Article 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible into evidence.
A review of the record does not reveal a copy of a written notice. However, the transcript of the trial does indicate that such notice was filed in open court prior to the State’s opening statement. The court stated that the record should reflect that a 768 Notice was given to the defendant and that a copy had been filed on behalf of the State. We find this statement by the trial judge indicative of procedural compliance with La.C.Cr.P. art. 768.
Additionally, the Supreme Court of Louisiana has held that the mandates of La.C. Cr.P. art. 768 are only required in a jury trial. State v. Cleary, 262 La. 539, 263 So.2d 882 (1972). Therefore, the State was not required to give advance written notice of its intent to use the confession because the instant case was a bench trial. Because the State was under no obligation to file a 768 Notice in a nonjury trial, and because the record reveals that such a notice was actually filed prior to opening statements, this assignment of error lacks merit.
Conditions precedent to use of confession — Free and voluntary rule.
The defendant contends that the State failed to prove that the statements given to the police officers were free and voluntary, because of the physical and mental state that he was in when the confessions were made.
LSA R.S. 15:451 provides: “Before what purposes [sic] to be a confession can be introduced into evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.” Thus, the State must meet its burden of proof in order to use an inculpatory statement of the defendant.
The State introduced the testimony of the two police officers who indicated that the defendant had been read his Miranda rights each time that a statement was made. The officers additionally testified that they did not force, intimidate, or threaten the defendant into making the in-culpatory statements. The police officers undoubtedly believed that the defendant was capable of giving a voluntary confession.
The defendant argues that his physical and mental condition prevented the statements that he made from being voluntary, in that the he was incapable of freely waiving his constitutional rights. The record supports the fact that the defendant was severely wounded when both statements were given, having suffered six gunshot wounds. Officer Daniel testified to the profuse bleeding, the disfigurement of the defendant’s legs probably due to broken bones, and the hysterical mental state as he cried for help. While Officer Hessler’s testimony does not reflect the same severity in the defendant’s condition, he does state that the defendant was bleeding and calling for help. The third officer, Rhodes, who took the statement at the hospital while the defendant was lying on a stretcher, makes no affirmative indication as to the defendant’s physical or mental state.
*988 The defendant refers this court to the Supreme Court’s decision in State v. Graffam, 202 La. 869, 13 So.2d 249 (1943), where the court determined that a confession was erroneously introduced at trial. In Graffam, the defendant suffered from a gunshot wound to the heart and there was medical testimony that the defendant had received morphine, was suffering from shock and had dangerously low blood pressure. The defendant contends that the instant ease is similar in that his injuries prevented him from a knowing waiver of his rights.
While the record reveals severe injury to the defendant, we do not find the same egregious circumstances that the court found in Graffam. One who has suffered physical harm can still be competent to give a free and voluntary confession. State v. Smith, 409 So.2d 271 (La.1982). A diminished mental capacity or intellectual capacity likewise does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Benoit, 440 So.2d 129 (La.1983). The court noted in Benoit, “The critical factor is whether the defendant was able to understand the rights explained to him and voluntarily give a statement.” Id. at 131.
In considering whether a confession was voluntary, including the defendant’s state of mind, the trial judge must look to the “totality of the circumstances” in making his finding of admissibility. State v. Serrato, 424 So.2d 214 (La.1982). Much weight should be given to the trial judge’s finding when the issue is whether the defendant was precluded by a diminished mental condition from understanding his rights and the consequences of waiving those rights. State v. Lefevre, 419 So.2d 862 (La.1982). Furthermore, a trial court’s determination of a statement’s admissibility will not be disturbed unless it is not supported by the evidence. State v. Brooks, 505 So.2d 714 (La.1987), cert. den. Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Duncan, 478 So.2d 992 (La.App. 4th Cir.1985), writ den. 484 So.2d 133 (1986); State v. Hall, 242 So.2d 239 (La.App.1970).
We conclude on the basis of the evidence as it is reflected in the record that the trial court did not err in finding a knowing and intelligent waiver of constitutional rights. When the facts and circumstances of this case are reviewed, we find no error in the trial court’s conclusion that the statements given by the defendant were free and voluntary, even in light of the defendant’s wounds. This assignment of error is without merit.
For the above and foregoing reasons, we affirm the defendant’s conviction, finding no error in the admission into evidence of the defendant’s statements at trial.