BOWES, Judge.
Defendant was convicted of aggravated rape and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction, alleging that his confession and identification should have been suppressed and also that the evidence used to convict him was insufficient. We affirm the conviction and sentence of defendant.

FACTS

The victim in this case is a ten year old white male. On approximately January 19, 1992, the victim met Carl J. Smith, the defendant, while walking near the railroad tracks for the Kansas City Southern Railroad which are close to the victim’s home. The victim was accompanied by two of his friends. The three children spoke with Smith on that day and returned the following day to speak with him again. Nothing unusual occurred on either day.
However, when the kids returned to the railroad tracks to speak with the defendant on January 21, 1992, Smith told the victim that one of the cars contained computers, TV’s and Nintendo games and he took the victim to see these alleged goods. Once inside the boxcar, the defendant took the victim to the corner and unsnapped the victim’s pants. At that point, Smith placed his mouth on the victim’s penis. Then the defendant placed his finger in the victim’s rear end before he penetrated the victim anally with his penis. After ejaculating in the victim, Smith let him go, but he told the victim that he would kill him and his family if he told anyone what happened. The victim went home and told his mother and her fiance what had happened.
The victim’s mother called “911” and reported the incident to the police. Once the police arrived, the victim gave them a description of the defendant, and the defendant was later found on a Kansas City Southern train somewhere in Baton Rouge based on that description. Smith was arrested in Baton Rouge and returned to St. James Parish.
Detective Lou Landry of the St. James Parish Sheriff’s Office compiled a photographic lineup in order for the victim and his friends to identify the defendant. When presented with the pictures, each boy identified Smith as the man they had seen at the railroad tracks. In addition, on January 30, 1992, Detective Landry set up a physical line-up at which the victim again identified the defendant as the person who had raped him.
During the investigation of the case, Smith made two statements to Detectives Lou Landry and Brent Dicharry. The first statement was made on January 22, 1992, and the defendant admitted talking with the kids but denied raping the victim. However, on January 23, 1992, the defendant again asked to speak to the officers, and he then confessed to having anal intercourse with the victim.
At the trial, Dr. Randall Poche testified that he had examined the victim on the date of the incident. He stated that the victim had been penetrated anally and that non motile sperm was discovered on the victim’s body. Samples of this evidence along with clothing and blood samples from both the victim and the defendant were sent to the Louisiana State Police Crime Laboratory where they were tested by Carolyn Booker. Mrs. Booker was qualified as an expert in Serology by the trial court. *421 She testified that the victim is a member of a group scientifically known as secretors and his blood group is A. The defendant is also a secretor and his blood group is B. She further stated that she found substances belonging to both blood groups “B” and “H” (blood group “H” is found in all blood types) in a semen sample taken from the victim’s briefs; and that she also found substance belonging to both blood groups “A” and “B” in a semen sample taken from the victim’s pants.

ANALYSIS

The defendant first argues that the trial court erred in denying his motion to suppress his confession. It is his contention that his oral statement, given to police officers while he was in custody was obtained in violation of his Constitutional rights because he was coerced into confessing.
Before a confession can be introduced into evidence, the State has the burden of proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(D); LSA-R.S. 15:451: State v. Vaccaro, 411 So.2d 415 (La.1982).
It must also be established that an accused who makes a confession during a custodial interrogation was first advised of his constitutional rights as per Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and that he voluntarily and intelligently waived those rights. State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, Castillo v. Louisiana, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981), State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Whether or not a showing of vol-untariness has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. The trial judge must consider the “totality of the circumstances” in deciding whether the confession is admissible. State v. Shepherd, 449 So.2d 1120 (La.App. 5 Cir.1984). The admissibility of a confession is, in the first instance, a question for the trial judge. His conclusions regarding the credibility and weight to be given to testimony relating to the voluntariness of a confession are entitled to great weight and will not be overturned on appeal unless they are not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983), State v. Weiland, supra.
The record reflects that defendant made his inculpatory statement to police officers while in custody. Both Detective Lou Landry and Detective Brent Dicharry testified that the defendant initiated the conversation by requesting to speak with them because he wanted to confess to the crime. In response, they went to the police station to speak with the appellant. Before talking with Smith, Officer Lou Landry testified that he contacted the appellant’s attorney, Mr. Folse, who instructed Landry to “advise the defendant not to give me (Detective Landry) a statement without first talking to him (Mr. Folse), and that if he insists, then I was to advise him of his rights and get him to sign the rights form.” The defendant stated that he did not want his attorney present, and that Detective Landry orally advised Smith of his Miranda rights. He further stated that after this Smith signed a waiver of rights form and confessed to raping the victim. Both officers testified that they did not use force or coercion of any kind to obtain the confession and no promises were made to the defendant to encourage his confession.
. The trial judge chose to believe the testimony of the police officers that the confession was taken pursuant to the specific request of the defendant and thus the statement was freely given and voluntarily by the defendant. We find no error in this determination and we hold that the trial court did not err in refusing to suppress the confession.
In his second assignment of error, defendant alleges that the identification of the appellant in the photographic line-up should have been suppressed because the identification procedure was tainted. Defendant argues that the photograph of the appellant was unduly suggestive because *422 the background in his picture is darker than the other pictures and his picture contains what appears to be fragments on one side. These factors caused the witness to improperly focus their attention on his photograph thereby leading to a substantial likelihood of misidentification.
In State v. Pizzo, 575 So.2d 844, 846 (La.App. 5 Cir.1991), this Court set forth the considerations in reviewing an allegedly suggestive photographic line-up:
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentifi-cation as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). State v. Smith, 520 So.2d 1305 (La.App. 5 Cir.1988). Photographs employed in a lineup are suggestive if they display a defendant so singularly that the witness’ attention is unduly focused on the defendant. Strict identity of physical characteristics among the persons depicted in the photo array is not required; all that is required is a sufficient resemblance to reasonably test the identification. State v. Smith, 430 So.2d 31 (La.1983); State v. Medford, 489 So.2d 957 (La.App. 5 Cir.1986).
Even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Isaac, 542 So.2d 651 (La.App. 5 Cir.1989).
[Emphasis in original and also supplied].
Here the defendant asserts that the photograph singles out the defendant because of the dark background and fragments on the edges. However, this Court has previously held that different color backgrounds and different shades of background are not unduly suggestive. See State v. Avila, 563 So.2d 990 (La.App. 5 Cir.1990) (defendant’s background was purple and other backgrounds were gray) and State v. Sepcich, 473 So.2d 380 (La.App. 5 Cir.1985) (defendant’s background was lighter than other backgrounds where all photographs were black and white). Also, in Pizzo, supra, this Court held that the fact that the photograph of the defendant contained a pro-, cessing defect did not make the lineup unduly suggestive. Thus, we find that the differences between the defendant’s photograph and the other photographs are not sufficient to single out the defendant’s picture in an unduly suggestive manner. Also, from a review of the six photographs used for the lineup it is apparent to us that the physical characteristics of the subjects are sufficiently matched to reasonably test the identification. We therefore hold that the defendant did not bear his burden of proving that his photograph in the lineup was unduly suggestive.
Assuming arguendo that the lineup had been suggestive, the admission of identification into evidence does not by itself constitute reversible error unless under all of the circumstances, the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. In determining the reliability of the identification, the court must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the criminal; (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. Against these factors is weighed the corrupting effect of the suggestive procedure itself (if such be the case). Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
In the present case, the victim and his two friends had held conversations with the defendant on two days prior to the incident, and, in the identification proceeding, all three children picked the appellant’s picture without hesitation. Also the victim provided the police with a very accurate description of the defendant’s physical appearance and clothing. In addition, the victim indicated on cross examination that he did not pick out the defendant’s picture because it was darker than the rest or had “fancy decorations” on the side of it [De *423 fense counsel’s terminology]. Finally, it should be noted that the victim also identified the defendant at a physical lineup held nine (9) days after the incident. At this second identification, the victim demonstrated a high level of certainty that the appellant was in fact the man who had raped him. We find that, given these circumstances, there does not appear to be a substantial likelihood of irreparable mis-identification.
Next, defendant challenges the sufficiency of the evidence which was used to convict him of aggravated rape.
The Constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that a conviction be based on proof sufficient for any rational trier of fact, reviewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5 Cir.1990).
Defendant was convicted of aggravated rape in violation of LSA-R.S. 14:42, which provides:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
The testimony at trial clearly showed that the defendant engaged in anal sexual intercourse with the victim, a ten year old, at approximately 6:00 p.m. on January 21, 1992. Not only did the victim testify with regard to the facts of the rape, but the defendant also confessed to his crime to the police on January 23, 1992.
Dr. Poehe testified that his examination of the victim proved that anal intercourse had occurred.
Viewing all of the evidence in the light most favorable to the prosecution, we hold that the State proved, beyond a reasonable doubt, all of the elements necessary to sustain defendant’s conviction for aggravated rape.
Defendant also requests that we review the record for patent errors in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). We have done so and we find none.
For the above discussed reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.