647 So.2d 502 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Timothy J. GUIDRY, Defendant-Appellant.
No. CR94-678.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*504 John Phillip Haney, St. Martinville, for State.
George W. McHugh Jr., St. Martinville, for Timothy J. Guidry.
Before KNOLL and WOODARD, JJ., and BERTRAND[*], J. Pro Tem.
KNOLL, Judge.
Defendant, Timothy J. Guidry, appeals his jury conviction for the aggravated rape of his minor daughter, a violation of LSA-R.S. 14:42. On May 9, 1990, the grand jury indicted defendant with eight counts of aggravated rape. After defendant entered a plea of not guilty to the indictment, trial proceeded on only one count of aggravated rape. A jury found defendant guilty as charged. After defendant's motion for new trial was denied, defendant was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
Defendant relies on five assignments of error in this appeal and also asks us to conduct an errors patent examination of the record. We affirm.

FACTS
This case involves the rape of defendant's daughter (hereafter the victim) when she was eight years of age. Evidence of the rape surfaced when the defendant and his wife, Carolyn Guidry, put the victim in Cypress Hospital in March of 1990 for psychological treatment. This hospitalization was triggered when the victim and her cousin ran away from her grandparents' home.
During one of the family sessions at Cypress Hospital, Mrs. Guidry told the hospital staff that defendant had sexually abused the victim's younger sister. After child protection workers and law enforcement officials interviewed the victim, it was their recommendation that medical personnel should examine the victim to determine whether she had been sexually molested. Though reluctant to have her daughter examined, Mrs. Guidry eventually had her family physician, Dr. Marelle Yongue, and a gynecologist, Dr. Patricia Birch, examine the victim. It was the testimony of both physicians that the victim's hymen was damaged and that such damage was consistent with sexual penetration.
On April 6, 1990, after Dr. Yongue's examination, the trial court issued a warrant for defendant's arrest, charging him with the aggravated rape of his daughter. After his arrest, defendant confessed that he raped his daughter. Mrs. Guidry then gave police officers permission to search their home wherein they found a pair of handcuffs and a lock of the victim's hair under defendant's bed.
The victim testified that during the summer of 1989, when she was eight years of age, defendant would come into her bedroom at night. She stated that defendant would close her bedroom door and tape her mouth shut. He always brought handcuffs with him and would either place them on her hands or feet. She then stated that defendant would lay on top of her and place "his bottom [the victim's word for penis] into her bottom [the victim's word for vagina]." The victim stated that she was scared of her father because on at least one prior occasion he pointed a gun at her and her mother. It was this same fear, she stated, which kept her from telling anyone about defendant's acts; not until her father was arrested and jailed did she detail to the investigating officer, Captain Lou Potier, what her father did to her.
On February 28, 1991, in an 11 to 1 vote, the jury convicted defendant of aggravated rape. Subsequently, defense counsel informed the trial court that Mrs. Guidry told him that the victim lied about defendant having *505 raped her and that the victim wanted to recant her testimony. Accordingly, on September 13, 1991, defendant moved for a new trial on the basis of this newly discovered evidence.
In response to defendant's motion for a new trial, the State motioned the trial court to appoint Dr. James Blackburn, a psychiatrist, to examine the victim. Pursuant to the motion, the trial court ordered the victim's mother, Mrs. Guidry, to have the victim examined on October 2, 1991. Mrs. Guidry failed to bring her daughter to Dr. Blackburn for the scheduled visit and a rule to show cause why she should not be held in contempt of court was issued on November 6, 1991. After conducting a hearing on the rule to show cause, the trial court found Mrs. Guidry in contempt of court, imposed a suspended jail sentence, and ordered her to have Dr. Blackburn examine the victim on December 16, 1991.
Mrs. Guidry brought the victim to Dr. Blackburn's office on December 16, 1991, but informed the office personnel that the victim was not willing to meet with the psychiatrist. The following day, Mrs. Guidry returned to Dr. Blackburn's and told them that the victim refused to see him outside the presence of her mother. When Dr. Blackburn would only agree to see the victim in private without Mrs. Guidry being present, Mrs. Guidry cancelled the appointment. A second rule to show cause was filed on July 24, 1992, asking the trial court to again hold Mrs. Guidry in contempt of court. In the course of that hearing, the court learned that defendant and Mrs. Guidry had instituted a tort claim against various police personnel for damages stemming from their alleged collusion by suggesting to the victim that her father raped her and she should testify against him. After hearing the testimony of Dr. Blackburn about his inability to see the victim, the trial court found Mrs. Guidry in contempt of court, and ordered her to pay for the costs of the missed appointments. However, since Dr. Blackburn testified that he would not be able to see the victim as an outpatient as a result of all that had transpired, the trial court rescinded its order for a psychological examination of the victim.
On October 7 and 20, 1992, the trial court heard defendant's motion for a new trial. After hearing testimony, the trial court denied defendant's motion and issued oral reasons for judgment.
Subsequently, on December 21, 1992, the trial court sentenced defendant to life imprisonment, without benefit of parole, probation, or suspension of sentence.

MOTION TO SUPPRESS
Defendant first contends that the trial court erred in admitting his confession into evidence. He argues that the State failed to show beyond a reasonable doubt that his confession was freely and voluntarily given, and makes three general assertions: (1) he was interrogated after being held in solitary confinement for approximately 26 hours; (2) that he was under the influence of medication; and (3) that the three police officers and a person from child protection interrogated him, assuring him that they would leave him alone after he told them what they wanted to know.[1]
In State v. Benoit, 440 So.2d 129 (La.1983), the Louisiana Supreme Court stated:
"Before the state may introduce a confession into evidence, it must be affirmatively shown that it was freely and voluntarily given. Whether such a showing has been made is analyzed on a case by case basis with regard to the facts and circumstances of each case. Where the accused is in custody, a prerequisite to admissibility of a confession is the advising of the accused of his constitutional rights and his intelligent waiver of those rights. The trial court's *506 determination that a statement was free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence." (Citations omitted).
Id. at 131.
From the outset, we note that there is no factual basis for defendant's contention that he was held in solitary confinement for approximately 26 hours before he was interrogated. The record shows that defendant was arrested on April 6, 1990, at approximately 10 a.m., that he was given his Miranda rights at the time of his arrest, that he was first interrogated at approximately 1:30 p.m., and that he gave his tape recorded statement on that same date between 3:31 p.m. and 3:45 p.m. Accordingly, there is no merit to defendant's contention that he gave his confession after the police officers held him in solitary confinement for 26 hours.
Defendant's next contention is that he was under the influence of medication at the time of his interrogation. Contrary to this assertion, at the hearing on the motion to suppress his confession, defendant claimed that he was confused during his interrogation because he was in pain and that he confessed in order that a doctor could provide him with medication. In addition, since defendant's third assertion involves a general allegation of police coercion of the confession, we will address it in connection of our review of the evidence adduced at the hearing on defendant's motion to suppress.
The fact that a defendant is suffering from a medical condition does not mean that he cannot give a voluntary statement. One who has suffered a physical harm and is suffering pain can still be competent to give a free and voluntary confession. See State v. Hahn, 526 So.2d 260 (La.App. 2 Cir.1988), writ denied, 532 So.2d 150 (La.1988). Likewise, when a defendant contends that his mental capacity was impaired because of his physical condition at the time of his interrogation, the jurisprudence has consistently held that the confession will be admissible unless the defendant establishes that he was impaired to such a degree as to negate his comprehension and to render him unconscious of the consequences of what he was saying. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). Moreover, as stated in Benoit, supra, "The critical factor is whether the defendant was able to understand the rights explained to him and voluntarily give a statement." Id. at 131.
The record shows that all the police officers stated that defendant gave his statement freely and voluntarily, without force, coercion or inducements of any kind. In support of its contention the State offered the testimony of four police officers and various documents which defendant signed.
Initially, the State introduced into evidence the Miranda rights form that defendant signed and a transcript of defendant's tape recorded confession to the crime of aggravated rape. Detective Patrick Calais testified that he read defendant his Miranda rights word for word at the time of arrest. Defendant acknowledged that he understood his constitutional rights and that he was willing to waive them.
Captain Lou Potier also testified that she again informed defendant of his various constitutional rights at approximately 1 p.m. on the day of arrest. The record shows that Captain Potier explained defendant's constitutional rights in detail; she specifically recalled that she defined the words, coercion and threats, so that defendant fully understood his rights before being interrogated. Although Captain Potier conducted the initial interrogation, defendant was uncooperative and asked to speak with the two male detectives, Detectives Kervin Fontenette and Eddie Romero.
Detectives Fontenette and Romero brought defendant upstairs to another interrogation room. They testified that at the beginning of the interrogation, defendant asked them to leave him alone so that he could think. After about fifteen minutes, defendant told Detective Fontenette that he wanted to make a statement. Detectives Fontenette and Calais tape recorded defendant's statement. In the statement, defendant admitted that he raped his daughter. The record shows that the police officers uniformly stated that defendant gave his *507 statement freely and voluntarily, without force, coercion or inducements of any kind.
Defendant testified at the hearing on his motion to suppress. He stated that he remembered the Miranda rights form being read to him, but that he mistook the word, waiver, to mean that he would get an attorney. In support of his version, he stated that he questioned Captain Potier about the word, waiver, and that she informed him that he would be given an attorney. Defendant stated that he specifically asked for a doctor and an attorney. Defendant further stated that Captain Potier and Detective Calais threatened to place him with prisoners who would be told that he was a child molester in hope that he would be hurt by them. In addition, defendant asserted that he was in pain during the interrogation and that he confessed so that he could see a doctor. He also stated that he vocalized his complaints of pain and his request for a physician to the interrogators. The police officers denied defendant's assertions.
In determining the legal correctness of the trial court's ruling on a defendant's motion to suppress, a reviewing court is not limited to evidence adduced at the hearing on that motion; it may also consider all pertinent evidence given at the trial of the case. State v. Overton, 596 So.2d 1344 (La.App. 1 Cir.), writ denied, 599 So.2d 315 (La.1992). In the present case, two of defendant's treating physicians testified at trial about defendant's medical condition. Accordingly, we will briefly refer to their testimony.
Dr. Marelle Yongue, a family practitioner, testified that she treated defendant off and on for sinus problems, depression, and headaches of unknown origin. During her treatment, Dr. Yongue testified that she prescribed various medicines for defendant's ailments. In direct questioning from the trial judge, Dr. Yongue testified that defendant's medical condition would not have adversely affected his ability to give a free and voluntary statement to the police on the day of his arrest.
Dr. James Domingue, a neurologist, saw defendant for continued problems with headaches, starting in 1988. Although he could not determine the etiology of the headaches, he opined that the headaches were part of chronic fatigue syndrome. He prescribed a sedative medication, an anti-depressant, pain medication, and an anti-viral drug for defendant's medical problem and discharged him. He did not testify about the effect of the medications on defendant's ability to give a free and voluntary statement.
In its denial of defendant's motion to suppress, the trial court stated:
"The testimony of Mr. Guidry is at odds with that of the four witnesses who testified for the State, and the tape itself, which was played here, is contrary to Mr. Guidry's representation of it. I am persuaded that the testimony of the State is credible, that of Mr. Guidry is not, ..."
After carefully reviewing the record, we find that the record fully supports the trial court's denial of defendant's motion to suppress his confession and we find no reason to overturn that determination.
Therefore, we find no merit to this assignment of error.

JURY INSTRUCTION
Defendant cites Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), contending that the jury charge on the question of reasonable doubt was incorrect.
After carefully reviewing the record, we find that defendant did not object in the trial court to the jury charge. It is well established in the Code of Criminal Procedure that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." LSA-C.Cr.P. Art. 841. Under appellate court jurisprudence, defendant's failure to contemporaneously object to an erroneous jury instruction as to reasonable doubt precludes appellate review of this assignment. State v. Warner, 93-0216 (La.App. 4 Cir. 7/27/94), 641 So.2d 684; State v. Berniard, 625 So.2d 217 (La.App. 4 Cir.1993), on rehearing, writ denied, 642 So.2d 1308 (La.1994). Erroneous jury instructions are not considered errors patent. State ex rel. Ross v. Blackburn, 403 So.2d 719 (La.1981). Accordingly, we do not *508 find that defendant's assignment of error is properly before us.

EXPERT TESTIMONY OF TERRY ANSEMAN
Defendant contends that the trial court erred when it allowed Terry Anseman, a psychometrist, to testify as an expert in the field of counseling abused children.
The competency of an expert is a question of fact within the sound discretion of the trial judge. A ruling qualifying a witness as an expert will not be disturbed absent a manifest abuse of discretion. State v. Michel, 422 So.2d 1115 (La.1982). Experience, as well as education, may form the basis of expertise. State v. Robins, 499 So.2d 94 (La.App. 1 Cir.), writ denied, 500 So.2d 411 (La.1986).[2]
Terry Anseman testified that she is a mental health counselor who holds a masters degree in psychology. She specializes in counseling individuals who have been sexually abused. Since 1988, she has done contract work for the Louisiana Office of Community Services in its foster care and adoptive services and has counseled approximately 200 individuals who have been abused. In order to perform her function, she has attended numerous seminars which have involved techniques in dealing with sexually abused children. Based on her education, training, and experience, the trial court accepted her as an expert in the field of counseling abused children.
After carefully reviewing the record, we do not find that the trial court abused its discretion in allowing Terry Anseman to testify as an expert in the counseling of abused children.
Defendant further contends that Anseman's testimony unduly bolstered the testimony of the child victim. After explaining her methodology of interviewing the victim in hope of independently validating her claim of sexual abuse, Anseman stated that she felt that the victim fit into the category of a child who had been sexually abused.
Our examination of the record shows that defendant failed to object to Anseman's testimony on any ground after the trial court accepted her as an expert. LSA-C.Cr.P. Art. 841 provides, in pertinent part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." The jurisprudence is replete with holdings that a defendant is limited to the grounds for objection articulated at trial and a new basis for objection cannot be raised for the first time on appeal. State v. West, 419 So.2d 868 (La. 1982). Accordingly, we find that this additional aspect of defendant's argument is not properly before us.
Therefore, we find no merit to defendant's assignment of error.

DENIAL OF DEFENDANT'S MOTION FOR NEW TRIAL
Defendant contends that the trial court erred in denying his motion for a new trial. Defendant argues that the minor child's recantation of her trial testimony was sufficient for the granting of a new trial.
LSA-C.Cr.P. Art. 851 provides in part:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered *509 before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;"
As stated in State v. Prudholm, 446 So.2d 729 (La.1984), LSA-C.Cr.P. Art. 854 establishes four requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial.
The trial court's application of these precepts to newly discovered evidence is entitled to great weight, and its denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Clayton, 427 So.2d 827 (La.1982).
Recantations of trial testimony should be looked upon with the utmost suspicion. State v. Tyler, 342 So.2d 574 (La.1977), cert. den., 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). To refuse to grant a new trial on such a basis is not an abuse of discretion. State v. Clayton, supra. A recantation at a new trial is a confession to perjury which destroys the credibility of the witness. State v. Linkletter, 345 So.2d 452 (La.1977), cert. den., 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978).
In the evaluation of whether the newly discovered evidence warrants a new trial, the test employed is not simply whether another jury might return a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981).
After thoroughly examining the record, we find that the trial court did not abuse its discretion in denying defendant's motion for a new trial. The transcript shows that the trial court conscientiously observed the witnesses' testimony and carefully weighed all the evidence. In its denial of defendant's motion for a new trial, the learned trial court stated:
"Now with regard to [the victim's] testimony and what the truth is, I don't know. I'm unable to ... make a conclusion on that. I don't know if [the victim] is telling the truth now. It's very hard to say, in view of all the testimony we've heard, particularly of an expert nature. I do know that there were three different occasions when she testified under oath in this courtroom and that, whatever the truth is, she lied on at least two of those occasions. Which two they are, I'm not sure, except for one thing: it seems fairly clear that her testimony when she recanted, so to speak, her earlier testimony that she had been threatened, it would seem to me that that is truthful. But, as to the rest of it, I just don't have the wherewithal to make that determination ... [W]hen she [was] asked for a reason why she made up the story that she was threatened, she had a very hard time handling that. Initially, she said she was under stress and under a lot of pressure when she testified at the trial and she wasn't, anymore. Yet, on September 8th of this year, just a little over a month ago when she was no longer under that stress and pressure, she still lied, according to her testimony given at the instant hearing.
I guess the point of the matter is that I can't say she was not telling the truth at the trial. I can't make that determination. And unless I can, I cannot grant a new trial on that basis. I certainly had an opportunity to observe her on all three occasions. I observed her at the trial, and she certainly seemed to be truthful, considering the whole scenario with the jury there and everything. And, obviously ... the jury believed that she was telling the truth. Drawing those two conclusions then, I will have to deny the motion for a new trial.
And in furtherance of the ruling, I might make these observations, also. Let's not forget that, in considering a motion for a new trial, I have to consider the question of whether justice was done, not only specifically whether testimony is recanted and that sort of thing.

*510 Let us not forget that there was medical evidence given at the trial to corroborate the fact of the crime. It was consistent with [the victim's] testimony at the time. And, indeed, there's not much explanation for that medical testimony, if you consider that the crime was not committed.
There was also, of course, the fact of the defendant's confession, specific confession offered at the trial. And I didn't find that his repudiation of that confession was very convincing, and obviously the jury didn't, either.
The point I'm making here is there is independent evidence of the crime, even if you take away the testimony of [the victim]. Whether that would have been sufficient to convict in the minds of the jury, I cannot be certain. But it's there, nevertheless, and should be taken into consideration.
I might also point out that the position of the defendant would be more convincing, except for certain factors. One is that the defendant and his wife have joined to file a civil suit against the sheriff and certain deputies, I understand, the very people who tried to help Mrs. Guidry and [the victim] when they were called upon. And I stress that: when they were called upon... these people came to the law enforcement authorities for help. The purpose of the civil suit, of course, is to win damages in terms of dollars. There is a financial interest then on the part not only of the defendant but of Mrs. Guidry in the outcome of the criminal case which was not there at the time. If [the victim] doesn't recant and if the defendant doesn't get a new trial and/or an ultimate acquittal, then they can hardly prevail in the civil case.
Under these circumstances and considering... Mrs. Guidry has had an opportunity to have intensive influence over ... [the victim] over these months. I thought about that a lot when I listened to ... the testimony today.
Another factor in making the defendant's position less convincing to me is the fact that Mrs. Guidry ... has had an opportunity to exert influence over [the victim], thwarted me in my efforts ... to get at the truth; that is, to have this child examined by Doctor Blackburn. I ... had to hold her in contempt of court, in contempt of my orders, twice.
The two things, then, the civil suit and Mrs. Guidry's contempt of this Court's orders, make the defendant's position much less convincing than it would be were it not for that ... [P]articularly if [the victim] had gone in and gotten examined by Doctor Blackburn, as I wanted to, I don't know how much help that would have been. It may have been a great help; I don't know. But, in any event, why ... would Mrs. Guidry not let it happen?
I can't divorce that kind of thing from the civil suit, the financial interest in the outcome of the criminal case. And I think I need to make those observations in addition to the initial ones that I made in evaluating the evidence.
And for those reasons, the motion for a new trial will be denied."
We have closely examined the record in light of the trial court's well documented reasons. In view of the credibility determinations which it was called upon to make, the strong testimony from the medical experts who found physical evidence of the rape of the victim, the supporting testimony from the sexual abuse counselor, and defendant's taped confession, we cannot say that the trial court abused its discretion in denying the motion for a new trial.

SUFFICIENCY OF THE EVIDENCE
In defendant's final assignment of error, he contends that the evidence was insufficient for a jury to find him guilty of aggravated rape.
An appellate court, in order to affirm a conviction, must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational finder of fact to conclude that every element of the crime was proved beyond a reasonable doubt. State v. Martin, 93-KA-0285 (La. 10/17/94), 645 So.2d 190. It is the role of the fact finder to weigh the respective credibility of the witnesses, and accordingly the appellate court should not second guess *511 the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard of review. State v. Richardson, 425 So.2d 1228 (La.1983).
LSA-R.S. 14:41, at the time of the present offense, stated:
"A. Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime."
LSA-R.S. 14:42(A)(4), as written at the time of this prosecution, provided:
"A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense."
From the outset, we note that defendant argues that the testimony of the victim was not credible. As noted in State v. Richardson, supra, the question of witness credibility is a matter for the finder of fact and not the appellate court. Accordingly, we find that this argument is not properly before us.
The record establishes that we are not faced with the defendant being convicted solely on his own uncorroborated confession. See State v. Martin, supra, which stated that, "an accused cannot be convicted in Louisiana on his own uncorroborated confession." To the contrary, in addition to the defendant's oral confession, the jury was presented with the testimony of the victim, medical testimony which demonstrated physical evidence consistent with the rape of the victim, and the opinion of a sexual abuse counselor that the victim's account of the facts was consistent with a child who has been sexually abused. This evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that defendant committed the aggravated rape of the victim.
Therefore, we find no merit to defendant's assignment of error.

ERRORS PATENT REVIEW
Pursuant to LSA-C.Cr.P. Art. 920 we have carefully reviewed the record for errors patent and have found none.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] At trial, defendant also asserted that he did not understand the second portion of the Miranda rights form because he thought the word waiver meant to receive something. He also stated that he asked for a doctor and an attorney, and that the police officers threatened to place him with other prisoners who would hurt him because he was a child molester. It is well settled that an appellate court will consider as abandoned any specification of error which has not been briefed. Uniform RulesCourts of Appeal, Rule 2-12.4. Accordingly, we consider these assertions abandoned because of defendant's failure to brief them. However, in the present case, we will include facts related to these issues for the completeness of the opinion.
[2] We decline to apply the more stringent rule of law established in State v. Foret, 628 So.2d 1116 (La.1993). In Foret, the Louisiana Supreme Court said that admissibility of expert testimony in Louisiana is governed by LSA-C.E. Art. 702 and Daubert v. Merell-Dow Pharmaceutical, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), interpreting the virtually identical provision in the Federal Rule of Evidence, F.R.E. 702. Daubert and Foret are 1993 decisions. In the present case, defendant was tried in February 1991, and sentenced in December, 1992. Accordingly, the prior jurisprudence addressing the admissibility of expert testimony applied. See State v. Bell, 94-KA-49 (La.App. 5th Cir. 6/28/94), 639 So.2d 856.