BOWES, Judge.
Defendant Drew M. Pizzo appeals his conviction for second degree murder in the death of Joella Kanzig. We affirm as follows.
On April 10, 1988, Jan Harrington was employed as a dancer at the Alibi Lounge in Metairie, Louisiana, in the area popularly designated as “Fat City”. At approximately 4:00 a.m., she and the victim went into the Que Pasa Lounge to have a few drinks. The defendant approached the ladies and offered to buy them drinks, introducing himself as “Drew”. The women accepted the drinks, and both danced with the defendant. The victim left the Que Pasa with her sister, while Ms. Harrington remained briefly with Mr. Pizzo, who subsequently asked Ms. Harrington to go outside to his car with him. Once inside the car, a dark green Corvette, Pizzo asked Ms. Harrington to go home with him. She refused and, following a brief argument, she got out of the Corvette and proceeded to her own vehicle.
Pizzo began to yell obscenities at Ms. Harrington while driving his vehicle slowly through the parking lot in a westerly direction toward Edenborn. In the meantime, Jackie Benefield, also a dancer at the Alibi, as well as in a neighboring lounge (Mickey Martin’s Ship Wheel), had come out into the parking lot adjacent to all these lounges on a break. As she sat on the steps left of the door to Que Pasa, she observed the defendant sitting in his car when Ms. Harrington got in. She witnessed the argument between the two and saw Ms. Harrington exit the vehicle. As the driver drove slowly through the parking lot, the victim and her sister came out of the Alibi Lounge. The Corvette stopped, but the driver kept the engine running as an argument ensued now with the victim who stood outside the car. Ms. Harrington was putting something into the hatchback of her car and had her back to the Corvette. As Ms. Benefield sat on the steps, she saw sparks or flames come out of the driver’s side of the vehicle, heard what sounded like a gunshot, and saw the victim fall to the ground. The driver sped away, in the Corvette. The victim, Ms. Kanzig, died of the gunshot wounds.
Based on information obtained from witnesses, Pizzo was arrested and charged with second degree murder. Following a jury trial, he was convicted as charged by a unanimous vote of the jury, and received the mandatory life sentence.
On appeal, the defendant alleges that it was error to (1) deny his motion to suppress the photographic lineup identifica *846 tion, and (2) to impose sentence without granting the mandatory 24-hour delay between denial of a motion for new trial and sentencing. We are also asked to examine the record for errors patent.
MOTION TO SUPPRESS
Prior to trial, the defendant filed a motion to suppress the photographic identification made by Ms. Benefield. It was alleged that the lineup was suggestive because his was the only photo which had a processing defect (ink smeared on the right side of his picture) and because it was the only one in which the mug shot “chest board” was exposed. Further, the reliability of the identification is questioned.
LSA-C.Cr.P. art. 703(D) provides as follows:
“On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.”
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misiden-tification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984). State v. Smith, 520 So.2d 1305 (La.App. 5 Cir.1988). Photographs employed in a lineup are suggestive if they display a defendant so singularly that the witness’ attention is unduly focused on the defendant. Strict identity of physical characteristics among the persons depicted in the photo array is not required; all that is required is a sufficient resemblance to reasonably test the identification. State v. Smith, 430 So.2d 31 (La.1983); State v. Medford, 489 So.2d 957 (La.App. 5 Cir. 1986).
Even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Isaac, 542 So.2d 651 (La.App. 5 Cir. 1989).
At the suppression hearing, Sergeant Judith Rice testified that, after obtaining information from several witnesses, she compiled a six-person color photographic lineup. On April 25, 1988, she showed the lineup to Jackie Benefield who positively identified defendant. Rice testified that she chose the photographs because of their similarities, such as age, color, hair and build. In conducting the lineup, Rice handed Benefield the stack of six photographs and told her to look at each one individually but not to turn them over. She stated that at no time did she suggest to Ms. Benefield which photograph to choose and also that, at the time Ms. Benefield viewed the lineup, the bottom of the photographs were covered with the white paper and Benefield did not look at the back of the photos.
Jackie Benefield also testified at the suppression hearing. She stated that she was present when the shooting occurred and was able to give a good description of the perpetrator and his vehicle because the area was well-lit. In addition, she testified that she had seen defendant earlier that evening when he approached her and began talking to her; Sergeant Rice subsequently showed her a photographic lineup from which she was able to positively identify defendant as the perpetrator; the six photographs were handed to her in a stack and at no time did Sergeant Rice suggest to her which photograph she should choose.
On cross-examination, Benefield was asked to pick out anything unusual about any of the pictures which made them different from the others. She testified that none of the pictures looked different to her, except that the defendant’s photo “looks like him”.
Applying the law and the facts to the present case, we find no support for the defendant’s contention that the lineup was suggestive, especially in view of the fact that Ms. Benefield herself noticed nothing different about the photograph.
In State v. Scott, 490 So.2d 396 (La.App. 5 Cir.1986), we found that a photo lineup *847 was not suggestive where the defendant’s picture had an ink spot on it and the number on the rear of the picture was upside down, unlike the others, and where the defendant was the only one with a bush haircut. There we said that those factors were not suggestive and did not focus a viewer’s attention on that particular photograph and where there was sufficient resemblance amongst the photos to have tested the witness’ memory of the defendant’s face. See also State v. O’Neal, 478 So.2d 1311 (La.App. 5 Cir.1985) (defendant’s shirt in his photo had two visible small “blood-like” stains, and was found not to be unduly suggestive where the identifications made were strong, were made from facial features, and where neither witness noticed the stains); State v. Buchanan, 463 So.2d 660 (La.App. 4 Cir.1985) (wherein it was held that the photographic lineup was not unduly suggestive even though defendant’s was the only photo in which subject had a tattoo); State v. Savoy, 501 So.2d 819 (La.App. 4 Cir.1986), writ denied, 502 So.2d 576 (La.1987) (where the Second Circuit concluded that photo lineup was not unduly suggestive even though defendant was the only man who had a mole on his face); and State v. Nasworthy, 542 So.2d 715 (La.App. 4 Cir.1989) (where the Fourth Circuit concluded that a photographic lineup which depicted defendant’s photo at a slightly closer range than the other suspects was not unduly suggestive where robbery victim testified that she did not notice any size dissimilarity among the photographs and was not influenced by this factor).
Here, there is nothing to cause us to conclude that Ms. Benefield noticed either the ink mark or the partial exposure of the “chest board” in Pizzo’s photo (we note that one other photograph in the lineup also partially reveals a “chest board”). All of the photographs used were the same size and contained pictures of people of similar age, build and features. The testimony, as set forth hereinabove, confirms that the lineup was not conducted in a suggestive manner. Moreover, the record shows that Ms. Benefield immediately and without hesitation picked out Pizzo’s photo as the perpetrator. Accordingly, under the circumstances in the instant case, we find that the lineup was not unduly suggestive.
Because the lineup was not constitutionally infirm, we need not conduct an inquiry under Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). The reliability of the identification is a factor relevant only upon a showing that the identification procedure itself was suggestive.
“In the absence of such a showing, as was the case here, challenges to the witness’ powers of observation do not raise constitutional issues, but are matters to be considered by the jury.” State v. Daniels [473 So.2d 873 (La.App. 4th Cir. 1985) ]. See also State v. Huckaby, 368 So.2d 1059 (La.1979).
State v. Medford, 489 So.2d 957 (La.App. 5 Cir.1986).
We find no error in the refusal of the trial court to suppress the photographic lineup.
SENTENCING
LSA-C.Cr.P. art. 873 reads as follows:
“If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.”
In the present case, there was no Motion for New Trial which was filed. Defendant was convicted on June 21, 1990 and sentenced on July 16, 1990. Prior to sentencing, the defendant asked and was granted permission to speak a few words to the court. Defendant basically told the court that he never had a fair trial because he was on narcotics at the time. After defendant expressed his dissatisfaction with his attorney and discontent about being “forced” to go to trial, the court stated:
“Okay, so your motion for a new trial,— if that is a motion for new trial — is denied at this time. Like I say, your appeal *848 attorney will file motions and work with you on that.”
Because a motion for new trial was not filed in accordance with LSA-C.Cr.P. art. 851 et seq., the 24-hour sentencing delay provided for in Article 873 is not applicable. The trial judge abided by the three-day delay between conviction and sentence, and, therefore, the mandate of Article 873 was satisfied.
Furthermore, even were we to consider the statement of the defendant to be a motion for a new trial, we find that any error in the timing of the sentencing would, in the present case,'be harmless. Defendant must show prejudice in such cases. See State v. Wiggins, 518 So.2d 543 (La. App. 5 Cir.1987); State v. Wormser, 467 So.2d 58 (La.App. 4 Cir.1985), and defendant here has made no such showing. This assignment of error is without merit.
PATENT ERROR REVIEW
We have reviewed the record for errors patent in accordance with guidelines in State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Schneider, 542 So.2d 620 (La.App. 5 Cir.1989) and find none.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.