786 So.2d 805 (2001)
STATE of Louisiana,
v.
Arthur J. WILLIAMS.
No. 00-KA-981.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*807 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, James A. Williams, Kevin V. Boshea, Michelle H. Hesni, Davison S. Ehle, III, Gretna, LA, Attorneys for Appellant Arthur J. Williams.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, *808 Alison Wallis, Counsel of Record on Appeal, Donald A. Rowan, Jr., Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges CANNELLA, McMANUS and CIACCIO, Pro Tempore.
CANNELLA, Judge.
Defendant, Arthur Williams, appeals from his conviction by a jury of forcible rape of Pamela Pierce, and from his sentence of 40 years imprisonment at hard labor, with two years without benefit of probation, parole or suspension of sentence. We affirm and remand.
In the late evening of December 4, 1998 and early morning of December 5, 1998, the victim patronized the Pair of Dice lounge where she consumed several beers. At some point, she left the lounge for the night and starting driving home toward Kenner. The victim admitted that she was intoxicated when she left the lounge and had a vague memory of the events leading up to the incident. She recalled that the Defendant was a passenger in her car, although she could not remember when or where she met Defendant, whether she offered him a ride or whether he asked for a ride. She testified that she had never seen the Defendant before that night.
The victim recalled that she stopped her car on a dead-end street somewhere in Kenner.[1] The Defendant got out of the car, but said he would be right back. When the Defendant returned, the victim exited her vehicle and accompanied the Defendant up a levee or embankment. She then became nervous and started to turn around to leave when the Defendant grabbed her arm and pushed her down to the ground. The victim stated that the Defendant was armed with a knife and threatened to kill her if she yelled. He then removed the victim's shoes and pants and proceeded to rape her. He then attempted to penetrate her anally. However, she screamed and he stopped. At one point, she got up and tried to run, but the Defendant caught her, pushed her down to the ground again, punched her in the face and raped her a second time. She said that he also attempted to get her to perform oral sex on him. Next, the Defendant ordered the victim to get dressed. They walked down the embankment to a nearby shed where another man was waiting. The Defendant ordered the victim to get into bed with the other man, who also raped her. However, after begging him to help her, the second man said he would and left the shed. The victim then got dressed. When she left the shed, she saw the Defendant rummaging through her car and exchanging "words" with the second man. The Defendant told the victim to get into the car. He got in the driver's seat and started driving. When they reached a traffic light at the intersection of Williams Boulevard and the I-10, the victim jumped out of the car because she was afraid of where he might take her and what he might do to her when he got on the interstate highway. She ran off the road and hid behind some concrete pillars.
Officer Tommy Powell was called to the scene. He testified that the victim was crying and hysterical upon his arrival. He stated that she had a laceration on her forehead and bruises on her arm. The victim was eventually taken to Lakeside Hospital where Dr. Vernon Carriere performed a rape examination. He testified *809 that the victim was very upset and was crying when she arrived at the hospital. He observed a cut over her right eye, bruising of her left cheek and bruising and abrasions on her left arm and right elbow. Her pelvic exam by Dr. Carriere revealed no trauma to the vaginal area.
Approximately two days later, Detective Mike Jackson prepared and presented a photographic lineup to the victim and she identified the Defendant as the first man who had raped her. He was subsequently arrested.
On appeal, the Defendant contends that the evidence was insufficient to support a conviction of forcible rape, the trial judge erred in denying his motion to suppress the identification, and the sentence is excessive.
The Defendant first claims that the evidence was insufficient to convict him of forcible rape.[2] He argues that the only evidence against him was the uncorroborated and inconsistent testimony of the victim. He complains that there was no scientific evidence linking him to the rape even though blood and hair samples were taken from him, there was no evidence of vaginal trauma to the victim, and there was no evidence of motile sperm in the victim.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722, (1998); State v. Barnes, 98-932 (La.App. 5th Cir.2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Barnes, 729 So.2d at 46. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Id.
Rape is "[T]he act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. R.S. 14:41 A. "Emission is not necessary and any sexual penetration, vaginal or anal, however, slight is sufficient to complete the crime." La. R.S. 14:41 B.
The Defendant was convicted of forcible rape in violation of La. R.S. 14:42.1, which provides in pertinent part:
(A) Forcible rape is rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
The victim testified that the Defendant fully entered her vaginally on two occasions *810 and attempted anal intercourse once, all without her consent. She stated that the Defendant threatened her with a knife, which he shoved in her face and then stabbed into the ground next to her head. She testified that the Defendant threatened to kill her if she yelled. She attempted to run, but the Defendant caught her, pushed her down to the ground and punched her in the face. The photographs in evidence corroborate her injuries.
Dr. Carriere testified that the pelvic examination of the victim did not show any evidence of trauma, which is not unusual after an attack, except in the young or elderly or if an object is used. Dr. Carriere also testified that he found no motile sperm, but that sperm is not necessarily released prior to ejaculation. The victim testified that she did not know whether the Defendant ejaculated. Dr. Carriere testified that the victim did have erythema, or redness, around her rectum which was compatible with attempted penetration.
The Defendant first argues that the only evidence linking him to the crime was the victim's inconsistent account of the rape. During the rape examination, the victim told medical personnel that there were two men in her car and that she was raped on the embankment by the two men. However, in her statement to the police and her trial testimony, she stated that there was only one man in her car and that he raped her on the embankment while another man raped her in a shed. In addition, the Defendant points out the victim's vague recollection of events leading up to the rape.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045, writ denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-0150 (La.6/30/00), 765 So.2d 1066; State v. Hawkins, 99-217 (La.App. 5th Cir.7/2/99), 740 So.2d 768, 769; State v. Hubbard, 97-916 (La.App. 5th Cir.1/27/98), 708 So.2d 1099, 1104, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415.
The credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Id. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293. Furthermore,
When a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony.
Hotoph, 750 So.2d at 1045, quoting State v. Bender, 598 So.2d 629, 636 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1125 (La. 1992).
Defense counsel cross-examined the victim at trial regarding the various inconsistencies in her account of the rape. The jury was aware of the prior inconsistent statements and obviously found the victim's trial testimony credible. We will not second guess that credibility finding. Further, the facts presented by the victim were sufficient for a rational trier of fact to *811 conclude beyond a reasonable doubt that the Defendant committed the offense.
Second, the Defendant argues that the victim's identification of him by the photographic lineup and the in-court identification should have been suppressed. He contends that marks on the back of his photograph in the lineup, which allegedly left an imprint that could be seen on the front of the photo, were unduly suggestive and rendered the photographic identification inadmissible. The Defendant further asserts that the victim's in-court identification should have been suppressed because it was tainted by the impermissibly suggestive photographic lineup shown to the victim prior to trial.
The Defendant bears the burden of proof on a motion to suppress an out-of-court identification. La.C.Cr.P. art. 703(D). The Defendant must prove that 1) the identification was suggestive, and 2) there was a substantial likelihood of misidentification. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932; State v. Biglane, 99-111 (La.App. 5th Cir.5/19/99), 738 So.2d 630, 634. It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. Biglane, 738 So.2d at 635. "Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony." Id.
A photographic lineup is unduly suggestive if the identification procedure displays the Defendant in such a way that the witness's attention is focused on him. Biglane, 738 So.2d at 635. Even if a pretrial identification is found to be suggestive, an in-court identification may be deemed reliable if there does not exist a "very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); State v. Thibodeaux, 750 So.2d at 932.
Certain factors are to be considered, 1) the witness's opportunity to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of his prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the time between the crime and the confrontation. State v. Prudholm, 446 So.2d 729, 738 (La.1984); Biglane, 738 So.2d at 635.
Detective Jackson composed the photographic lineup and presented it to the victim two days after the incident. However, on the day before the victim was shown the photographic line-up, Detective Jackson showed the same photographic lineup to co-Defendant, Eugene Brown (Brown). Brown identified the picture and signed his name, date and time on the back, as instructed by Detective Jackson. When the victim was shown the line-up, Detective Jackson testified that the victim did not hesitate in identifying the Defendant's picture. She also signed and dated the back of the photo which she identified. However, the Defendant contends that Brown's signature and the other writings on the back of his photograph left an imprint that could be seen on the front of his picture. He claims that the victim could see this imprint which drew undue attention to his photograph.
The victim was not called to testify at the hearing on the motion to suppress, but Detective Jackson testified that the victim identified the Defendant's photograph without hesitation and did not say that she saw anything on the photographs. Detective Jackson admitted that if he looked closely and the lighting was just right, he could see some indentation on the photograph. Furthermore, the trial judge examined *812 the photographic lineup and did not see any markings on the photograph that would draw attention to the picture.[3]
In reviewing the photographic lineup, we note that all of the photographs in the lineup are black men of approximately the same age, have shaved haircuts and some sort of mustache, and have similarly shaped noses and lips. It is very difficult to see any back imprints.
In State v. Pizzo, 575 So.2d 844 (La.App. 5th Cir.1991), this Court held that an ink smear on the right side of defendant's picture, which was labeled as a processing defect, did not make the photographic lineup unduly suggestive. The Court found that all the photographs used in the lineup were the same size and contained pictures of people of similar age, build and features. We also noted that the witness "immediately and without hesitation" picked out defendant's photo as the perpetrator of the crime. Id., at 847. In addition, there was no indication that the witness noticed the ink mark.
In State v. Scott, 490 So.2d 396 (La.App. 5th Cir.1986), this Court held that the photo lineup was not suggestive where there was an ink spot on the defendant's picture and where the number on the rear of the picture was upside down, unlike the others. This Court found that those factors were not suggestive and did not focus a viewer's attention on that particular photograph.
After our review of the photographs, and considering Scott and Pizzo, we find that the photograph was not suggestive. In addition, the victim saw the perpetrator clearly as he was "in her face" (R., p. 154). She also identified the Defendant without hesitation. Thus, we find that the trial judge did not err in denying the motion to suppress the identification.
The Defendant finally contends that the trial judge imposed an excessive sentence, because he failed to articulate reasons for imposing the maximum sentence and did not consider mitigating circumstances.
The Defendant failed to file a motion to reconsider sentence after he was sentenced by the trial judge, but only made a general objection. Thus, he did not comply with La.C.Cr.P. art. 881.1. See: State v. Hollins, 99-278 (La.App. 5th Cir.8/31/99), 742 So.2d 671, 686. La. C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider sentence within 30 days of sentencing, but requires that the motion be made orally at the time of sentencing, or in writing, and that it set forth the specific grounds on which the motion is based. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, precludes a defendant from raising those grounds on appeal. State v. Mims, 619 So.2d 1059 (La.1993); State v. Tribbit, 00-153 (La.App. 5th Cir.8/29/00), 767 So.2d 901, 903. In Mims, the Louisiana Supreme Court was silent as to whether the failure to comply with Article 881.1 precludes even a claim of constitutional excessiveness. However, in similar circumstances, this Court has considered the issue of whether the sentence was constitutionally excessive. Tribbit, 767 So.2d at 903; Hollins, 742 So.2d at 686; State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784, 789; State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38;
*813 Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sect. 20. Richmond, 734 So.2d at 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id.; State v. Lobato, 603 So.2d 739, 751 (La.1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside, absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. La. C.Cr.P. art. 881.4(D); Richmond, 734 So.2d at 38. Furthermore, a sentence may be reviewed for excessiveness even though it is within statutory range. Id.
La.C.Cr.P. art. 894.1(C) states: "The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." However, "[i]f there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in Article 894.1 will not require a remand for re-sentencing." State v. Morris, 98-236 (La.App. 5th Cir.9/16/98), 719 So.2d 1076, 1082; Tribbit, 767 So.2d at 904.
A sentence for forcible rape must be served at hard labor and may range from a minimum of five years to a maximum of forty years. At least two of the years must be imposed without benefit of probation, parole or suspension of sentence. La. R.S. 14:42.1. The trial judge sentenced the Defendant to the statutory maximum of forty years. In sentencing him, the trial judge stated:
Based on the evidence in the case, and the fact that you brought in somebody else to commit a similar offense, the Court is going to sentence you to forty years ... the first two years are without benefit of probation, parole or suspension of sentence. (R., pp. 191-192).
The trial court noted that a pre-sentence investigation had been ordered, but that the Defendant chose not to wait for the results.
In State v. Riche, 608 So.2d 639, 640 (La.App. 5th Cir.1992), writ denied, 613 So.2d 972 (La.1993), this Court upheld a forty year sentence for a defendant convicted of forcible rape. In Riche, the defendant jumped into the victim's automobile as she drove into the parking lot of a bank. He ordered the victim to drive around various apartment complexes while he searched for an acquaintance. The Defendant then ordered the victim to drive to a secluded area where he raped her at knife point, then demanded her money. When he learned that she did not have any cash, he offered to release her if she would withdraw money from her bank account, which she did.
In finding the maximum sentence not to be excessive, this Court noted that the defendant fell within the category of "the worst kind of offender." The defendant had been previously convicted of attempted forcible rape. In addition, the defendant told the police that he would continue committing these types of offenses until he was placed in a situation where no opportunity existed to commit such crimes.
In the present case, the Defendant vaginally raped the victim twice and attempted anal intercourse. When she *814 tried to escape, he punched her in the face. Armed with a knife, he threatened to kill her. He then caused her to be raped by a second man. We find that, under the facts of this case which are contained in the record, the maximum sentence of forty years was not constitutionally excessive.

PATENT ERROR
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337, 339 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 205.
We find one patent error. Although the minute entry contains a statement that the prescriptive period for postconviction relief runs from the date that the judgment of conviction and sentence become final, the transcript does not reveal that the trial judge so advised the Defendant as required by La.C.Cr.P. art. 930.8. Where there is a discrepancy between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
The trial judge's notice to the Defendant was incomplete. Therefore, we hereby order the trial court to send written notice advising the Defendant correctly of the provisions of La.C.Cr.P. art. 930.8, within 10 days of the rendering of this opinion, and to file written proof in the record that the Defendant received said notice. See: State v. Kershaw, 94-141 (La.App. 5th Cir.9/14/94), 643 So.2d 1289.
Accordingly, the Defendant's conviction and sentence are hereby affirmed. We further order the trial court to send written notice to the Defendant advising him correctly of the provisions of La.C.Cr.P. art. 930.8, within 10 days of the rendering of this opinion and to file written proof in the record that the Defendant received said notice.
CONVICTION AND SENTENCE AFFIRMED; REMANDED.
NOTES
[1] The location was later determined to be in the 3100 block of Washington Street in Kenner, Louisiana.
[2] The Defendant failed to file a post verdict judgment of acquittal challenging the sufficiency of the evidence pursuant to La.C.Cr.P. art. 821. However, such failure does not preclude appellate review of the sufficiency of evidence. State v. Washington, 421 So.2d 887 (La.1982).
[3] It is noted that this Court may consider evidence adduced at trial as well as the hearing on the motion to suppress the identification. State v. Clennon, 98-1370 (La.App. 5th Cir.6/30/99), 738 So.2d 161.