**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1310

STATE OF LOUISIANA

VERSUS

W.D.F., JR.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 276,855
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and J. David Painter, Judges.

**AFFIRMED AS AMENDED**
**WITH INSTRUCTIONS.**

**James C. Downs, District Attorney**
**Sheryl L. Laing, Asst. District Attorney**
**Ninth Judicial District**
**P. O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**Counsel for Plaintiff/Appellee:**
    **State of Louisiana**

**Sherry Watters**
**Louisiana Appellate Project**
**P. O. Box 58769**
**New Orleans, LA 70158-8769**
**(504) 723-0284**
**Counsel for Defendant/Appellant:**
     **W.D.F., JR.**

GREMILLION, Judge.

In this case, the defendant, W.D.F., Jr., was convicted of indecent behavior with a juvenile, a violation of La.R.S. 14:81, and was sentenced to serve three years at hard labor without benefit of probation, parole, or suspension of sentence.[1] On appeal, he argues that the trial court erred in admitting evidence of other unproven allegations of sexual misconduct, in allowing hearsay testimony, and in finding that the State proved the elements of indecent behavior beyond a reasonable doubt. For the following reasons, we find that these assignments of error lack merit and affirm Defendant's conviction.

**FACTS**

W.F., Defendant's daughter, visited him the weekend of April 17 and 18, 2004. During that same visit, her friend Kayla spent the night with her.[2] That night, Defendant went to bed before W.F. and Kayla. W.F. testified that when she and Kayla went to bed Defendant was asleep and she slept in the middle of the bed between Defendant and Kayla. According to W.F., she and Defendant later changed places, with Defendant sleeping in the middle. She said that about thirty minutes to an hour after she went to bed, Defendant put his hand up her shirt and rubbed her breasts. Later on cross-examination, W.F. testified that Defendant put his hand up her shirt for the first time while she was sleeping in the middle. On re-direct, she testified that Defendant first touched her when she was in the middle of the bed. She also said that Defendant put his arm around Kayla and pulled her closer to him.

---

[1] The initials of Defendant and the victim will be used in accordance with La.R.S. 46:1844(W).

[2] The Defendant and W.F.'s mother were divorced.

1

W.F. testified that both she and Kayla subsequently got up and went to the bathroom where they talked for a while and then went back into the bedroom. W.F. testified that when she and Kayla went back into the bedroom, Defendant asked if they had taken their bras off. W.F. said that the two girls then got back into bed with Defendant. She claimed that Defendant again put his hand up her shirt and kept pulling Kayla closer to him. She then testified that she and Kayla went to the bathroom again and after they returned to bed, nothing else occurred.

On Saturday, W.F. said she spent the night at the home of a friend and that she returned to her mother's home on Sunday, and at that time, she did not tell anyone what had occurred on Friday night.

Kayla Monroe testified that she spent the night with W.F. during the weekend of April 17 and 18, 2004. She said the night she stayed, she and W.F. slept in bed with Defendant. Kayla testified that Defendant went to bed before she and W.F. According to Kayla, she and W.F. took baths in the hall bathroom while Defendant read a book. She said that when the girls went to bed, they thought the Defendant was asleep. At that time, W.F. was in the middle of the bed. Kayla testified that she and W.F. kept getting up because they were scared because Defendant was hugging them and had his hand on W.F.'s chest. Kayla further testified that these things occurred when W.F. was in the middle of the bed. Kayla said that Defendant had his right arm around her and his hand on her stomach. Kayla said that the two girls first got out of bed when W.F. looked at her. Kayla also testified that she looked at W.F. and said she was scared, so the two went into the bathroom. Once in the bathroom, the two talked about what was happening. Kayla

2

testified that she saw Defendant grab W.F.'s breasts, as the light in the hall bathroom was on at that time. Kayla also testified that once the two returned to bed, she sat up and saw Defendant's hand "up to the top" of W.F. The two girls then returned to the bathroom.

Defendant's father who was also sleeping at the house testified that on the night in question he woke up because W.F. and Kayla were laughing, giggling, and making a lot of noise. He claimed that they were in the hall bathroom and the light in "their" bedroom was on and no one was in the room. He said that he told the girls to be quiet and went in the living room to get Defendant, told Defendant to quiet the girls, and then went back to bed.

Defendant's brother, Douglas, testified that he was home on the night in question. We note that both W.F. and Kayla testified that Douglas was not at the house that night, but his father said that he was. Douglas testified that he had to scold W.F. and Kayla several times for being loud and cutting up. He knocked on the door of the hall bathroom once and told the girls they needed to be quiet or they would wake Douglas' father. He also told them to be quiet once when they were in the bedroom. Douglas testified that when he went to the bedroom, Defendant was sleeping in the living room. He said that he also heard his father chide the girls.

Defendant testified that his daughter, W.F., spent the night at his residence on April 17, 2004, and that her friend, Kayla, also spent the night. Once the group got in from Skateville, he told the girls to get ready for bed and he went to the living room and laid down on the couch, where he intended to sleep. He said that his father later woke him and told him the girls were making too much noise. He said he

3

then went to fuss at the girls and returned to the couch. He further testified that he went a second time to the bedroom to fuss at the girls and got into bed with them.

Defendant claimed that when he first got into bed with the girls, W.F. was in the middle, but she later wanted to sleep on the outside of the bed so he slept in the middle of the bed. Defendant denied touching W.F.'s breasts and pulling Kayla to him.

When questioned on redirect examination, W.F. said that no one told her and Kayla to be quiet. Additionally, she said that once the group arrived home, she did not see anyone besides Defendant and Kayla. Kayla testified on re-direct examination that no one corrected her and W.F. for being loud and she saw no one that night but W.F. and Defendant.

W.F. said that she next saw Defendant the weekend of May 7 and 8, 2004. On Friday, the two drove to New Orleans for a trip to Six Flags. W.F. testified that on the trip to New Orleans she was attempting to sleep on the back seat when she felt his hand in her pants. At that time, she claimed that Defendant rubbed her buttocks and then felt her "private." W.F. further testified that while sleeping at the hotel in New Orleans, Defendant placed his hand under her shirt, touched her breasts, and kept putting his hand down her pants. At one point, she said that he pulled her pants down to her knees. W.F. asserted that she later woke up and Defendant was on his hands and knees, "like backwards," and his "private" was hanging in her face. Additionally, she said Defendant tried to put her hand down his pants and said, "I just want you to feel me."

4

W.F. also testified that the following Saturday night, on the trip home from New Orleans, Defendant told her that he would massage her feet. She testified that he did not use his hands, but massaged her feet with his genitals. However, W.F. said that she never saw Defendant's private. She also said that Defendant wanted her to sit on his lap, which she did while he drove. W.F. further testified that Defendant "kept putting his hand under there and messing with himself. And then he had taken his thing out of his pants, and he was rubbing it on me." However, she claims that she did not see his private. She was, however, convinced that he exposed himself because his hands were on the steering wheel and she felt something on her back while she sat in his lap, and when he massaged her feet, his hands were on the steering wheel and she felt something touching her feet.

On Sunday after her return from her visit with Defendant, W.F. told her mother what her father had done to her and her mother called the police. W.F. then wrote a statement that she brought to the sheriff's department.[3]

W.F.'s mother, L.D., testified that on Mother's day of 2004 W.F. went to bed and subsequently came to her crying.[4] L.D. said that W.F. then told her that "her daddy had fooled with her." She claimed that she did not go over any of the details with W.F. until the police arrived at her home.

The record reflects that Defendant also denied inappropriately touching W.F. during their trip to New Orleans

---

[3] The statement corroborates W.F.'s testimony as to what occurred at her father's home and was introduced as State Exhibit 1.

[4] Mother's Day was on May 9th in 2004.

## SUFFICIENCY OF EVIDENCE

In his last assignment of error, Defendant contends that the State failed to prove the elements of indecent behavior with a juvenile beyond a reasonable doubt. Because a finding that the evidence is insufficient would require an acquittal, we will address this assignment of error first. *State v. Hearold*, 603 So.2d 731 (La.1992).

Defendant was convicted of indecent behavior with a juvenile, which is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. La.R.S. 14:81. Thus, in order to find that Defendant committed the offense of indecent behavior with a juvenile, the State was required to prove that: (1) there was an age difference of greater than two years between Defendant and W.F.; (2) W.F. was not yet seventeen years of age; (3) Defendant committed a lewd or lascivious act upon the person or in the presence of W.F.; and (4) that he intended to arouse or gratify either his own or W.F.'s sexual desires.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Leger*, 05-0011, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert denied*, _ U.S. _, _ S.Ct. _ (2007).

6

Proof of (1) and (2) above is obvious. Defendant is W.F.'s father, therefore, there is clearly an age difference of greater than two years between Defendant and W.F. W.F. testified that at the time of trial she was fourteen years old.

Regarding (3) above, in *State v. Interiano*, 03-1760, p. 7 (La. 2/13/04), 868 So.2d 9, 15, the supreme court discussed the meaning of lewd and lascivious as follows:

> In [*State v.*] *Holstead*, [354 So.2d 493, 497-98 (La.1977),] this court reaffirmed its prior jurisprudence that the statute provides fair notice that the defendant "is charged with having done an act upon the person of a juvenile which is lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner." 354 So.2d at 498 (internal quotation marks and citation omitted). Further, as the Reporter's Comment to La.R.S. 14:81(A) observes, the state [sic] encompasses not only the physical touching of the victim in an indecent manner, but also "indecent sexual displays in the presence of children under the age of seventeen."

W.F. testified that on the night of April 17, 2004, Defendant reached under her shirt and rubbed her breasts two separate times. Based on the supreme court's comments in *Interiano*, we find that Defendant's actions were sufficient to constitute lewd and lascivious behavior.

The State also had to prove (4) above, that is, that Defendant had the specific intent to arouse or gratify his sexual desires or those of W.F.

> Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10. Specific criminal intent may be inferred from the circumstances present in the case and the actions of Defendant. *State v. Broussard*, 560 So.2d 694 (La.App. 3 Cir.), *writ denied*, 566 So.2d 981 (La.1990).

*State v. Reed*, 00-1537, p. 7 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, 1266, *writ denied*, 02-1313 (La. 4/25/03), 842 So.2d 391. Defendant's acts of intrusion under W.F.'s shirt on two occasions and rubbing her breasts were sufficient to prove the essential element of specific intent to arouse or gratify sexual desire.

Defendant asserts that the State proved he touched W.F. under her shirt but over her bra. He argues that while the evidence may have shown an attempted indecent behavior, there was no evidence that the lewd or lascivious act was complete or that its intent was to arouse or gratify sexual desire was completed. We disagree.

W.F. testified that, upon reentering the bedroom after she and Kayla returned from the bathroom the first time, Defendant asked if the girls had taken their bras off. That is the only testimony regarding a bra. However, it does not matter whether Defendant touched W.F. over her bra or on her bare skin because it is the touching that is the lewd and lascivious act that gratifies sexual desire and is the essence of the crime.

We are supported in that conclusion by the cases of *State v. Sturdivant*, 27,680 (La.App. 2 Cir. 2/28/96), 669 So.2d 654, and *State v. Teague*, 04-1132 (La.App. 3 Cir. 2/2/05), 893 So.2d 198. In *Sturdivant*, the defendant asked a young female victim inappropriate and sexually suggestive questions during a tour of a school building. Subsequently, when the victim's back was turned, the defendant attempted to grab her breasts and then he touched, lifted up, and rubbed her buttocks. Our colleagues on the Second Circuit Court of Appeal found the defendant's conduct was sufficient to constitute a lewd and lascivious act, despite the fact that the victim was fully clothed. In *Teague*, we found that the evidence was sufficient to support a

8

conviction for indecent behavior with a juvenile when the defendant touched the minor victim's penis through the victim's clothing.

Defendant next asserts that there are several "disturbing and inconsistent factors" in W.F.'s testimony that "render it unreasonable and so unreliable that it will not support a conviction." Again, we disagree. Defendant claims that W.F. testified that she and Kayla got out of bed twice, but never turned a light on or made any noise. Defendant argues that she said that Douglas was not home that night, yet she did not sleep in his room or the living room as she had done in the past. Instead, she and Kayla returned to their places on each side of him. Defendant further claims that W.F. did not tell anyone about her allegations despite numerous opportunities to do so. Finally, Defendant argues that the accounts given by W.F. and Kayla were materially different. He asserts that W.F. said she and Kayla watched television while he went straight to bed and Kayla testified that she and W.F. took baths. Further, he observes that W.F. said that he was asleep when the two girls got into bed while Kayla testified that he was reading a book. Defendant also brings up the discrepancies in the girls' testimony. He shows that W.F. said there were no lights on anywhere and Kayla testified that the bathroom light was on; that W.F. testified that she was in the middle of the bed at first and Kayla testified that he was in the middle of the bed when the girls went to bed; and that W.F. testified that she and Kayla went to the bathroom twice and Kayla testified that they went ten or fifteen times.

We note that Defendant does not set forth any inconsistencies in the testimony of W.F., but points out differences between the testimony of W.F. and Kayla. These differences do not pertain to the actual acts of inappropriate touching

9

by Defendant. We are also cognizant that the trial court stated in its ruling that it believed the testimony of W.F. and Kayla. As we said in *State v. Willis*, 05-218, p. 15 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 378-79, *writ denied*, 06-0186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, __ U.S. __, 127 S.Ct. 668 (2006) (alteration in part in original):

> "[t]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. '[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.'" [*State v.*] *Schexnaider*, [03-144 (La.App. 3 Cir. 6/4/03),] 852 So.2d [450,] 457 (citations omitted), *quoting State v. Williams*, 00-981, p. 7 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 810, *writ denied*, 01-1377 (La.3/20/02), 812 So.2d 646. Furthermore, the testimony of the victim alone is sufficient to establish the elements of a sexual offense. *Id*.

Therefore, the arguments and assertions set forth by Defendant in this assignment of error lack merit and the evidence, when viewed in the light most favorable to the prosecution, is sufficient to support his conviction of indecent behavior with a juvenile.

## EVIDENCE OF OTHER ACTS OF SEXUAL MISCONDUCT

In this assignment of error, Defendant contends that the trial court erred in admitting evidence of other unproven allegations of sexual misconduct in that the prejudicial effect outweighed the probative value. He claims that evidence of the acts committed in Orleans Parish had no relevance as they were not similar to those that occurred in Rapides Parish. He further argues that the State did not prove the acts committed in Orleans Parish by clear and convincing evidence. Finally, he asserts that the evidence of the acts committed in Orleans Parish were of such little probative value that the prejudicial effect far outweighed the probative value. Furthermore, he

10

argues that the trial court should have instructed itself on the limited use of *Prieur* evidence or evidence of other alleged sexual acts pointing out that pursuant to *State v. Miller*, 98-0301 (La. 9/9/98), 718 So.2d 960, the trial court must, at a defendant's request, offer a limiting instruction to the jury.

To support his position, Defendant cites La.Code Evid. art. 412.2 and cites *State v. Jackson*, 625 So.2d 146 (La.1993), for the proposition that one of the factors listed in Article 412.2 must be at issue before such evidence can be admitted. In *Jackson*, the supreme court stated that not only one of the factors set forth in La.Code Evid. art. 404(B)(1) must be at issue, but it must have some independent relevance, or be an element of the crime charged in order for evidence of other acts to be admissible.[5] Defendant also cites *State v. Davis*, 449 So.2d 466 (La.1984), for the proposition that the commission of another crime must be proven by clear and convincing evidence. Defendant also cites La.Code Evid. art. 403 and asserts that even if independently relevant, evidence of other bad acts may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time.

---

[5] Article 404(B)(1) provides with regard to other crimes, wrongs, and acts:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Article 412.2(A) provides:

When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Initially, we find that the acts committed in Orleans Parish constitute a sex offense. Additionally, W.F. is the type of victim the legislature sought to protect when it lowered the standard set by Article 404(B) by enacting the separate and distinct Article 412.2. However, even the lower standard set by Article 412.2 subjects the evidence sought to be admitted to the balancing test set forth in La.Code Evid. art. 403.

The cases and requirements cited by Defendant in his argument pertain to Article 404. It is our opinion that had the legislature intended Article 412.2 to require that motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident be at issue before evidence could be admitted under Article 412.2, it would have amended Article 404(B) to include the language of Article 412.2 rather than creating a separate provision. *See State v. Williams*, 02-0898, 02-1030 (La. 10/15/02), 830 So.2d 984. Thus, evidence of the acts committed in Orleans Parish are admissible if the balancing test set forth in Article 403 is satisfied.

The Article 403 balancing test pits the probative value against the prejudicial effect. There can be no question that the testimony regarding the alleged sexual acts that occurred in Orleans Parish was prejudicial. In *Willis*, 915 So.2d 365, the defendant was charged with one count of aggravated rape and four counts of

12

forcible rape. During the trial, the trial court allowed evidence regarding the defendant's prior sexual offenses against children. Two witnesses testified regarding sexual acts committed against them and the other members of their family. We found that the evidence of prior sexual offenses was admissible under Article 412.2 in order to prove propensity and was not unfairly prejudicial as the trial court gave a limiting instruction to the jury.

As we have said, in this case, a bench trial was conducted. The comments to Article 403(d) provides as follows:

> (d) The risk of undue prejudice spoken of in this Article may be less substantial when the trier of fact is a judge rather than a jury, and thus sometimes evidence may properly be admitted in a non-jury trial that would be inadmissible in a jury trial. See Pugh & McClelland, "The Work of the Louisiana Appellate Courts for the 1975-1976 Term, Evidence," 37 La.L.Rev. 575 (1977), reprinted in G. Pugh, Louisiana Evidence Law, 1978 Supp. at 1.

*See also State v. Jones*, 95-1457 (La.App. 3 Cir. 5/8/96), 677 So.2d 493.

Based on *Willis* and the comments to Article 403, we find that the admission of evidence regarding the acts that occurred in Orleans Parish were not so prejudicial as to outweigh its probative value. Further, while Defendant did make a contemporaneous objection to the admission of this evidence, there was no request for the trial court to instruct itself regarding the admission and limited use of the evidence. Additionally, as this was a bench trial, it was not necessary for the trial court to explain in detail all of the legal considerations it used in reaching its verdict, and particularly instructions regarding the limited use of other crimes evidence. For these reasons, this assignment of error lacks merit.

13

## HEARSAY TESTIMONY

In this assignment of error, Defendant contends that the trial court erred in allowing the admission of hearsay testimony, W.F.'s statements to others and her written statement, to impermissibly bolster her testimony. This assignment of error is without merit.

In support of his argument that W.F.'s written statement should not have been admitted into evidence, Defendant relies on La.Code Crim.P. art. 793 and cases that interpret that article. Again, we call to mind that this was a bench trial. Article 793 is situated under Section 1 of "General Provisions" of Chapter 3, "Trial by Jury" of Title XXVI, "Trial Procedure" of the Code of Criminal Procedure. It defines the use of evidence in the jury room by a jury. It has no place in a bench trial. The written statement was nothing more than a reiteration of what she testified to at trial. There was no indication that the statement was reviewed by the trial court during its deliberation. Even if the trial court reviewed the document, there is nothing in the record indicating that it gave the statement any undue weight or that the statement in any way unduly attributed to the verdict in this case.

Defendant asserts that allegations made by W.F. to her mother and Kayla were hearsay and their testimony regarding W.F.'s allegations were hearsay. Defendant claims that Kayla admitted that she had not really seen anything, but was testifying based on what W.F. allegedly told her in the bathroom. He argues that when asked to say what happened or what she saw, Kayla said that she "thought" Defendant touched W.F. one time outside her shirt, that he touched W.F.'s chest, and was grabbing her "boobs." Defendant also complains because W.F.'s mother was allowed

14

to testify that W.F. told her he had "fooled with her." Defendant contends that the testimony of Kayla and W.F.'s mother regarding the allegations made by W.F. clearly contributed to the verdict. He argues that the testimony was hearsay and that there were no exceptions to the hearsay rule that would allow its admission into evidence. However, we cannot find that Defendant objected to this evidence when it was admitted. Without a contemporaneous objection, Defendant cannot now be heard to make such an objection. It is too late for the trial court to rule and correct an error if, in fact, one exists. Therefore, any error regarding said testimony was waived. La. Code Crim.P. art. 841. Accordingly, as we have said, this assignment of error has no merit.

## ERRORS PATENT

We review all appeals for error patent in accordance with La.Code Crim.P. art. 920. In this case, we have found two errors patent. First, the trial court imposed an illegal sentence in that it ordered Defendant's sentence be served without benefit of parole, probation, or suspension of sentence. The trial court has discretion to refuse to suspend a sentence, but La.R.S. 14:81 does not authorize it to impose the sentence without benefit of parole.

In *State v. Sanders*, 04-0017, p. 1 (La. 5/14/04), 876 So.2d 42, 42, the supreme court stated:

> In cases in which the sentencing error made by the trial court does not involve the omission of a restrictive term specified by the legislature as part of the sentence but the imposition of limits beyond what the legislature has authorized in the sentencing statute(s), an appellate court should not rely on La.R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La.C.Cr.P. art. 882 to correct an illegal sentence "at any time".

15

Accordingly, we amend Defendant's sentence by deleting the prohibition on parole eligibility and instruct the trial court to make an entry in its court minutes reflecting this change. *See State v. Poirrier*, 04-825 (La.App. 3 Cir. 12/1/04), 888 So.2d 1123.

Second, the record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## CONCLUSION

Defendant's conviction for indecent behavior with a juvenile is affirmed. However, we amend his sentence by deleting the prohibition on parole eligibility and instruct the trial court to make an entry in the minutes reflecting this change. Additionally, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings.

**AFFIRMED AS AMENDED WITH INSTRUCTIONS**.

This opinion is NOT DESIGNATED FOR PUBLICATION, Uniform
Rules—Courts of Appeal, Rule 2-16.3.

16